FILED _____ The Honorable Robert S Lasnik
ENTERED
_____ LODGED _____
RECEIVED

APR 15 2002 MR

AT SEATTLE
CLERK U.S. DISTRICT COURT
BY   WESTERN DISTRICT OF WASHINGTON
CC   TO JUDGE

UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL TRADE COMMISSION,

                              Plaintiff,

            v

CYBERSPACE.COM, LLC, et al ,

                           Defendants

No. C00-1806L

DEFENDANT CHRIS HEBARD AND
COTO SETTLEMENT'S RESPONSE TO
PLAINTFF'S MOTION FOR
SUMMARY JUDGMENT, MOTION TO
STRIKE SUMMARY JUDGMENT
EVIDENCE AND MEMORANDUM IN
SUPPORT THEREOF

       COMES NOW Chris Hebard and Coto Settlement (the "Hebard Defendants") and file
this their Response to Plaintiff's Motion for Summary Judgment, Motion to Strike Summary
Judgment Evidence and Memorandum in Support Thereof and would respectfully show this
Court as follows

## I. OVERVIEW

       The Federal Trade Commission (the "FTC") alleges that the Hebard Defendants and
others violated 15 U S C. §45(a) in connection with the marketing by the "EPV Entities"[1] of
internet services via "solicitation checks," a universally common form of direct mail marketing

---

[1]    Electronic Publishing Ventures, L L C, Cyberspace Com, L L C, Essex Enterprises, L L C,
Splashnet Net, L L C and Surfnet Services, L L C are hereinafter and collectively referred to as the "EPV
Entities " Defendants Coto Settlement and French Dreams Investments, N V each own 50% of Electronic
Publishing Ventures, L L C, which owns the other EPV Entities Defendants Chris Hebard and Ian Eisenberg have
beneficiary interests in, respectively, Coto Settlement and French Dreams Investments, N V

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 1
Case No C00-1806L

**FOSTER PEPPER & SHEFELMAN PLLC**

**ORIGINAL**


CV 00-01806 #00000172

172

whereby one indicates agreement to the product or service by cashing or depositing the check The FTC's case, however, is a house of cards whose foundation is based upon three primary assumptions which are repeatedly made by the FTC throughout the Motion[2] First, the FTC *assumes* that essentially all consumers who deposited the solicitation check did so in error. Second, the FTC *assumes* that the marketing material was confusing to consumers Third, the FTC *assumes* that the EPV Entity's business generated a high level of complaints.   As discussed further herein, each of these assumptions is unfounded and unsupported

In addition, the Hebard Defendants move herein to strike almost all of the FTC's summary judgment evidence as improper under Rule 56   The FTC produced a staggering eleven volumes of exhibits comprising of approximately fourteen inches of documents in support of its motion for summary judgment, however, in presenting these documents to this Court, the FTC disregarded even the most basic requirements of Rule 56

## II. MOTION TO STRIKE SUMMARY JUDGMENT EVIDENCE

Although the FTC submitted fourteen inches of documents in connection with its request for summary judgment, those documents actually referenced by the FTC in its Motion are considerably more limited. In presenting its summary judgment evidence to this Court, the FTC ignored even the most basic evidentiary principals. For the reasons set forth herein, the Hebard Defendants move to strike most of the summary judgment evidence presented by the FTC

### A. Unauthenticated Documentary Exhibits

It is "well settled" that unauthenticated documents, those "which have not had a proper foundation laid," cannot be considered on a motion for summary judgment. Canada v. Blain's Helicopter, Inc , 831 F 2d 920, 925 (9th Cir. 1987)   See also, Orr v. Bank of America, 2002 WL 338141 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a

---

[2]   Plaintiff's Motion for Summary Judgment against Ian Eisenberg, Chris Hebard, Olympic Telecommunications, Inc , French Dreams Investments, N V , and Coto Settlement and Supporting Memorandum of Points and Authorities filed by the FTC on or about March 27, 2002, hereinafter, the "Motion "

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 2
Case No C00-1806L

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50319898 01

1  motion for summary judgment.")   The FTC did not even attempt to lay a foundation for the

2  following Exhibits, each of which the FTC relied upon in its Motion

3  
4  
5  
6  
7  
8  
    Exh 44 (Motion, p. 3); Exh 46 (Motion, p 3), Exh 50 (Motion, p. 3); Exh 51 (Motion, p 12), Exh 52 (Motion, p. 4); Exh 53 (Motion, p 12), Exh 61 (Motion, p. 8); Exh 62 (Motion, p. 8); Exh 63 (Motion, p. 8); Exh 64 (Motion, p 8); Exh 65 (Motion, p. 8), Exh 68 (Motion, p 8); Exh 74 (Motion, p 16), Exh 77 (Motion, p. 14); Exh 78 (Motion, p. 14), Exh 80 (Motion, pp. 7 and 16); Exh 81 (Motion, p 16), Exh 86 (Motion, p. 15); Exh 87 (Motion, p. 15), Exh 89 (Motion, p 15); Exh 90 (Motion, p. 15), Exh 92 (Motion, p 15), Exh 93 (Motion, p 15), Exh 94 (Motion, p. 15); Exh 96 (Motion, p. 11); Exh 123 (Motion, p. 11); Exh 124 (Motion , p 14); Exh 143 (Motion, p. 12), Exh 144 (Motion, p. 3), Exh 145 (Motion, p. 3); Exh 154 (Motion, pp. 1 and 14), Exh 157 (Motion, p. 3); Exh 167 (Motion, p. 12), Exh 169 (Motion, p 12); Exh 181 (Motion, p 16); and Exh 303 (Motion, pp. 8 and 10).

9  
10  Accordingly, the Hebard Defendants move to strike each of these exhibits.

11      In addition, the FTC relies on a number of documents which are referenced in deposition

12  excerpts cited by the FTC   However, even if these deposition excerpts are admissible (and they

13  are not for the reasons described below), the testimony provided fails to authenticate these

14  documents.   Thus, the Hebard Defendants further move to strike the following documents as

15  unauthenticated:

16  
17  
18  
19  
    Exh 68 (Motion,  p 12); Exh 85 (Motion,  p 15), Exh 95 (Motion,  p 16); Exh 125 (Motion,  p 14), Exh 146 (Motion,  p. 12); Exh 147 (Motion,  p 12), Exh 153 (Motion,  p. 14); Exh 163 (Motion,  p 16); Exh 179 (Motion,  p. 15), Exh 187 (Motion,  p. 14); "CLS15018," attached to Exh 268 (Motion, page 7); "H6634," attached to Exh 266 (Motion, page 7), "CJR15208," attached to Exh 267 (Motion, page 7); "H7828," attached to Exh 272 (Motion, page 7), "H7863," attached to Exh 281 (Motion, page 7), and "H7803," attached to Exh 284 (Motion, page 7).

20  **B. Unauthenticated Deposition Excerpts**

21      The FTC also designates excerpts from eight depositions   (Exhs 260, 261, 262, 263,

22  264, 266, 267 and 268)   However, these deposition excerpts do not contain any court reporter

23  certification or, for that matter, any attempt at certification whatsoever.[3]   Accordingly, these

24  deposition excerpts cannot be considered.  See, Orr v  Bank of America, 2002 WL 338141 (9th

25  
26  
   [3]    Note that deposition excerpts in Volume IX of the FTC's Exhibits do contain pages with court reporter certifications  However, only three pages of the excerpts from this Volume are actually cited by the FTC in the Motion  (Page 82 of Exh 261 [Motion, page 5], page 97 of Exh 260 [Motion, page 13], and page 102 of Exh 264 [Motion, page 13] )

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 3
Case No C00-1806L

**FOSTER PEPPER & SHEFELMAN PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

1    Cir. 2002).[4]  Thus, the Hebard Defendants move to strike these deposition exhibits in their
2    entirety

3       **C. Specific Objections to Deposition Excerpts**

4          **1.      Excerpt from the Deposition of Chris Hebard (Exhibit 260)**

5          **a.      Page 126, Lines 19-25; Page 127, Lines 11-16; and Page 129, Lines 1-3**
6    **(Motion, page 14):**The Hebard Defendants move to strike these deposition excerpts on the
7    basis of hearsay and the best evidence rule.  (Federal Rule of Evidence 1002) Mr. Hebard is
8    asked questions about the contents of written documents and about statements made by others

9          **b.      Page 131, Lines 14-20 (Motion, pages 15 and 20):**  The Hebard Defendants
10   move to strike this deposition excerpt on the basis of lack of foundation  The FTC in its
11   questioning fails to establish any personal knowledge by Mr Hebard.

12         **c.      Page 160, Line 16 through Page 161, Line 9 (Motion, page 15):**  The Hebard
13   Defendants move to strike this deposition excerpt on the basis of hearsay  Mr Hebard is asked
14   questions about statements made by the author of a written document placed before him.

15         **d.      Page 179, Line 20 through Page 180, Line 2 (Motion, page 16):**  The Hebard
16   Defendants move to strike this deposition excerpt on the basis of hearsay and lack of
17   foundation.  Mr. Hebard is asked questions about statements made by the author of a written
18   document placed before him and no showing is made that he has personal knowledge regarding
19   the subject of the document

20         **2.      Excerpt from the Deposition of Don Reese (Exhibit 264)**

21         **a.      Page 50, Line 22 through Page 51, Line 2; Page 52, Lines 18-23; and Page**
22   **90, Lines 19-23 (Motion, page 13):**  The Hebard Defendants move to strike these deposition
23   excerpts on the basis of hearsay and the  best evidence rule   Mr. Reese testifies as to the

24

25

26   [4]      This discussion is contained in key cites 9 and 10   As of the date of the drafting of this pleading, page
     references were not available for this opinion

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR         **FOSTER PEPPER & SHEFELMAN PLLC**
SUMMARY JUDGMENT - 4                                   1111 THIRD AVENUE, SUITE 3400
Case No C00-1806L                                      SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50319898 01

1  substance of statements, written and oral, made by other persons   In addition, the question on

2  page 52, lines 17-20 is leading

3      **b.      Page 66, Lines 13-19 (Motion, pages 6, 9 and 13):**  The Hebard Defendants

4  move to strike this deposition excerpt on the grounds of hearsay and the best evidence rule   Mr

5  Reese testifies as to statements made in written complaints

6      **c.      Page 72, Lines 7-24 Page 73, Lines 12-17; and Page 73, Line 21 through Page**

7  **74, Line 4 (Motion, pages 14 and 15)·**  The Hebard Defendants move to strike these deposition

8  excerpts on the grounds of hearsay   Mr Reese testifies as to the substance of his conversations

9  with others

10     **d.      Page 81, Line 20 through Page 82, Line 9 (Motion, page 7):**  The Hebard

11  Defendants move to strike this deposition excerpt on the basis of lack of foundation   Mr Reese

12  testifies as to the reasons for business decisions without any showing that he has personal

13  knowledge of this subject

14     **e.      Page 98, Line13 through Page 99, Line 24; Page 100, Lines 13-16; Page 100,**

15  **Line 17 through Page 101, Line 20; Page 102, Lines12-21; Page 105, Lines 7-18; Page 103,**

16  **Line 20 through Page 104, Line 5; and Page 105, Lines 1-6 (Motion, pages 13 and 15):**  The

17  Hebard Defendants move to strike these deposition excerpts on the basis of lack of hearsay and

18  the best evidence rule   Mr. Reese testifies as to the substance of written documents

19     **f.      Page 182, Lines 5 Through 23   (Motion, page 16):**  The Hebard Defendants

20  move to strike this deposition excerpt on the basis of lack of foundation and hearsay   Mr. Reese

21  admits that the basis for an opinion he asserted in an email was deductive logic, conjecture and

22  statements he heard from consumers.

23     **3.      Deposition Excerpts from the Deposition of Starnet (Exhibit 265)**

24     **a.      (Malecki Deposition) Page 88, Lines 7-22 (Motion, Page 7):**  The Hebard

25  Defendants move to strike this deposition excerpt on the grounds of lack of foundation   There

26

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 5
Case No C00-1806L

**FOSTER PEPPER & SHEFELMAN PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50319898 01

1   is no showing that Mr Malecki has personal knowledge of the information regarding billing to
2   which he testifies.

3         **4.     Excerpt from the Deposition of Charles Coram (Exhibit 266)**

4         **a.     Page 57, Lines 18-25 (Motion, Pages 6 and 10):**  The Hebard Defendants move
5   to strike these deposition excerpts on the basis of lack of foundation   In these excerpts, Mr
6   Coram is clearly speculating

7         **5.     Excerpt from the Deposition of Lucinda Schoomer (Exhibit 268)**

8         **a.     Page 34, Lines 2-6; Page 34, Line 16 through Page 35, Line 5; and Page 35,**
9   **Line 19 through Page 36, Line 1 (Motion, Pages 6, 9 and 10):**  The Hebard Defendants move
10  to strike these deposition excerpts on the basis of hearsay   In these excerpts, Ms Schoomer
11  testifies as to conversations with someone with Cyberspace com    However, on cross
12  examination, in portions of the deposition <u>not cited</u> by the FTC, Ms. Schoomer conceded that
13  she could not remember the name of the company of the person with whom she spoke.
14  (Schoomer Depo., page 70, line 20 through page 74, line 18)  Since Ms Schoomer was unable
15  to definitely identify the speaker, the party/opponent exception to the hearsay rule does not
16  apply.

17        **D.     Consumer Declarations (Exhibits 270-298)**

18        For the reasons set forth in Reply Brief of Defendants Chris Hebard and Coto Settlement
19  to FTC Opposition to Hebard Defendants' Motion for Partial Summary Judgment filed with this
20  Court on March 29, 2002, the Hebard Defendants move to strike all of the consumer
21  declarations presented by the FTC (Exhibits 270-298) because these declarations are unreliable
22  in the manner in which they have been presented by the FTC.

23        Further, the Hebard Defendants move to strike all documents attached to these consumer
24  declarations as unauthenticated.  Nowhere in these declarations do the declarants specifically
25  identify the attached documents and make any legitimate effort to authenticate same.  Finally,
26  the Hebard Defendants move to strike Exhibits 273, 279, 290, 291 and 296 on the grounds of

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 6
Case No C00-1806L

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50319898 01

1
2

hearsay and lack of foundation, insofar as these declaration describes thoughts and statements of others

3

**E. FTC Employee Declarations**

4
5
6
7
8
9
10
11

The Hebard Defendants move to strike Exhibits 300, 301, 302 and 305 of the FTC as improper summary judgment evidence  These exhibits are declarations of four of the FTC's employees  Since these employees clearly lack personal knowledge as required by Rule 56, such declarations would only be proper if these employees are expert witnesses.  However, expert opinion is admissible in a summary judgment context only if it appears that the affiant is competent to give expert opinion.  Rebel Oil Company, Inc. v  Atlantic Richfield Company, 51 F 3d 1421, 1435 (9th Cir  1995), cert. denied, 516 U.S. 987, 116 S.Ct. 515, 133 L.Ed.2d 424 (1995)  As set forth below, these declarations fail to establish this required competency

12

**1.     Declaration of John A. Crowley (Exhibit 300) Cited in Motion, Pages 4, 18**

13
14
15
16
17
18

In his deposition, Mr. Crowley purports to give opinions and make conclusions as to purported monetary transactions between the defendants.  However, the only qualifications given by Mr. Crawley is that he has a law degree, an accounting degree, has worked as an accountant for ten years and provides forensic accounting assistance.   This background information is superficial and uninformative and in no way establishes Mr. Crowley as an expert witness competent to render expert opinions.

19
20
21
22
23

Moreover, Mr  Crowley further states "Relevant documents are attached to my declaration" (¶9) and yet no documents are attached  Rather, the documents referenced in Mr Crowley's deposition are found in Volume VII of the FTC's summary judgment evidence.  However, no foundation is laid for these documents; thus Volume VII is inadmissible in its entirety

24

**2.     Declaration of Helena Joly (Exhibit 301) Cited in Motion, Page 5**

25
26

In her declaration, Ms  Joly purports to give opinions and make conclusions as to marketing response rates  However, the only qualifications given by Ms Joly is that she is an

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 7
Case No  C00-1806L

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

1    "Honors Paralegal"  Neither Ms. Joly's testimony nor the spreadsheet she prepared should be

2    accepted as proper summary judgment evidence

3        **3.    Declaration of Lisa M. Tobin (Exhibit 302) Cited in Motion, Pages 5, 6, 7, 8**

4    **and 17**

5        In her declaration, Ms. Tobin purports to give opinions and make conclusions as to her

6    analysis of various databases.  However, the only qualifications given by Ms. Joly is that she is

7    an investigator with the FTC, that she has "designed, interpreted and analyzed databases and

8    spreadsheets for the past four years," and that she is "proficient in both Microsoft Access and

9    Microsoft Excel."  This description is entirely uninformative; her qualifications do not appear to

10   be different from that of a typical clerical staff person

11       Moreover, the primary purpose of the Tobin Declaration is to provide additional support

12   for the FTC's contention regarding "low usage."  In doing so, Ms  Tobin heavily relies upon

13   Exhibit 4 (invoices from Starnet) and Exhibits 11 and 12 (computer printouts from Starnet), all

14   of which are unauthenticated   The FTC's claim of "low usage" is the cornerstone of its case

15   Thus, the fact that the only summary judgment evidence presented by the FTC is

16   unauthenticated documents and unqualified opinion testimony highlights the deficiencies in the

17   FTC's case.

18       **4.    Declaration of Alexandra Magill (Exhibit 305), Cited in Motion, Page 13**

19       In her declaration, Ms  Magill purports to give opinions and make conclusions as to

20   seeing many complaints in connection with the discovery taken in this case. However, the only

21   qualifications given by Ms. Joly is that she is an "Honors Paralegal." No rational argument can

22   be made that this declaration is based upon either an expert opinion or personal knowledge, and

23   for the FTC to present this declaration to this Court demonstrates a complete disregard of Rule

24   56.

25

26

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 8
Case No  C00-1806L

**FOSTER PEPPER & SHEFELMAN PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50319898 01

## F. Exhibits Not Cited by the FTC

For reasons inexplicable to the Hebard Defendants, the FTC chose to burden this Court with voluminous documents not cited in the Motion  The only rational explanation of which the Hebard Defendants can conceive for this bizarre behavior by the FTC is that the FTC intends to "sandbag" the Hebard Defendants by using the uncited exhibits in its Reply Brief.  That is, in replying to this response, the FTC would, for the first time, cite additional documents buried somewhere among its eleven volumes of exhibits.

In connection with the Motion, the FTC bears the burden of pointing out specific facts, through competent summary judgment evidence, establishing that no material fact exists as to each element of its causes of action.  See, e.g., S D. Myers, Inc  v  City and County of San Francisco, 253 F.3d 461, 474 (9th Cir 2000)  Thus, any documents not cited by the FTC in the Motion are not properly before the Court for purposes of the Motion  Accordingly, the Hebard Defendants move to strike all Exhibits not specifically referenced in the Motion

## III.   FACTUAL BACKGROUND

### A.   The "Solicitation Check"

The EPV Entities offered internet related services to both businesses and consumers. (Hebard Decl., ¶4)  The services were marketed by means of a "solicitation check" which stated clearly that cashing or depositing the check constituted acceptance of the internet services  The terms of the solicitation check was purposely placed above the endorsement line on the back of the check where the recipient was certain to see it before cashing or depositing same. (Hebard Decl., ¶5)  Moreover, a similar notice was provided on the back of a stub attached to the check (Hebard Decl., ¶4 and Exhibit "A" thereto)  In addition, included in the envelope with the check was an insert which: 1) described the internet service offered; 2) described the monthly charge for the service, 3) described the consequences of cashing or depositing the check; 4) disclosed that the monthly charge would be added to the consumer's local phone bill; and 5) provided an 800 number to call for refunds  (Hebard Decl , ¶4 and Exhibit "A" thereto)

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 9
Case No C00-1806L

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50319898 01

1    The terms of this offer were clear.  A study conducted by market researcher Erard

2    Moore, with the input of Dr J Howard Beales, then a professor at  George Washington

3    University, concluded that nearly 90% of those shown the marketing piece understood that by

4    cashing or depositing the check they were agreeing to make a purchase or sign up for a service

5    (Moore Depo , page 30, lines 22-25; Exhibit 247, page 16.  See pages 130-157 for Mr Moore's

6    expertise, experience and qualifications )   Moreover, each of the three consumers which

7    Plaintiff deposed in an attempt to establish consumer confusion readily admitted that the

8    solicitation check was not confusing

9    First, Ms  Lucinda Schoomer of First DataBank, Inc  in Indianapolis, Indiana, testified

10   that she was familiar with solicitation checks having received them at home.  (Schoomer Depo ,

11   page 56, line 4 through page 57, line 1)  When asked to review a sample solicitation check sent

12   by the EPV Entities, Ms  Schoomer readily admitted that the terms of the solicitation check

13   were clear to her and that had she received the check, she would not have cashed it.  (Schoomer

14   Depo., page 57, lines 8 through 14, page 65, lines 12 through 16, and page 66, line 25 through

15   page 67, line 9)

16   Second, Mr  Charles Coram of Coram's Steak & Eggs in Panama City, Florida, also

17   testified that he was familiar with solicitation checks, having received them at home (Coram

18   Depo , page 42, line 7 through page 43, line 7), and that the terms of the EPV Entities'

19   solicitation check were clear to him.  (Coram Depo , page 43, line 17 through page 46, line 9)

20   Third and finally, Mr  Jack Robrecht or F.E. Booker Company in Pensacola, Florida,

21   also testified that the terms of the solicitation check were clear to him.  (Robrecht Depo , page

22   46, line 17 through page 47, line 2)

23   **B.    The Marketing Activities by the EPV Entities**

24   Marketing by the EPV Entities commenced during or about late 1998   (Hebard Decl.,

25   ¶6)   Before and throughout this marketing, the principals and managers of the EPV Entities

26   regularly consulted with their counsel, Arent Fox Kintner Plotkin & Kahn, a Washington, D.C.

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 10
Case No C00-1806L

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50319898 01

1  law firm with extensive experience and knowledge in consumer regulatory matters, and with

2  specific experience in handling disputes with the Federal Trade Commission   (Hebard Decl ,

3  ¶6)

4      During the course of the marketing, the EPV Entities sent approximately 4.4 million

5  direct mail pieces with solicitation checks enclosed; of this amount, approximately 3 3 million

6  were to businesses and 1.1 million were to consumers   (Hebard Decl , ¶7)  Approximately

7  225,000 responded by depositing the solicitation checks; the business mailings had a 4 69%

8  response rate, and the consumer mailings had a 6.49% response rate. (Hebard Decl , ¶7)  The

9  EPV Entities' policy with respect to refunds was to issue refunds as requested by the customer,

10  and to this end, the EPV Entities paid in excess of $2.8 million in refunds to consumers

11  (Hebard Decl , ¶7)

12          **C.    Customer Service Problems Experienced by the EPV Entities**

13      As with any new business venture, the EPV Entities experienced "growing pains,"

14  primarily with respect to customer service   (Hebard Decl , ¶8)  Defendants are aware that

15  during certain periods, the phone lines and staffing were not adequate   (Hebard Decl., ¶8)

16  Defendants are also aware that on occasion, certain persons answering the telephones did not

17  follow the correct policies in responding to requests for refunds.    (Hebard Decl., ¶8)

18  Defendants believe that these customer service problems were limited and short term in nature,

19  and the FTC has produced no evidence to the contrary. (Hebard Decl., ¶8)  The principals and

20  managers of the EPV Entities took proactive steps to correct these customer service problems,

21  including many telephone conferences between members of the organizations of defendants

22  Chris Hebard and Ian Eisenberg to determine the cause of various customer service problems

23  and to correct same. (Hebard Decl., ¶8)  As a result of these "growing pains" and other reasons,

24  the EPV Entities received various customer complaints and inquiries from state regulatory

25  agencies  (Hebard Decl., ¶8)  The EPV Entities promptly and professionally responded to these

26  complaints and inquiries with the assistance of their counsel  (Hebard Decl., ¶8)

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 11
Case No C00-1806L

**FOSTER PEPPER & SHEFELMAN PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

1    The consumer depositions presented to this Court by the FTC are, at most, evidence of

2    the momentary lapses in customer service described in the Hebard Decl.  Ms Schoomer

3    testified that her real problem was that the individual to whom she talked regarding a refund

4    refused  (Schoomer Depo , page 75, line 21 through page 76, line 22)  Mr Coram testified that

5    he eventually got refunded in full  (Coram Depo., page  47, lines 10 through 16), and that his

6    real problem was with poor customer service. (Coram Depo , page 48, line 19 through page 49,

7    line 18, and page 51, lines 3 through 9).

8        The FTC also provided anecdotal evidence from eighteen consumers who claim that a

9    customer service representative stated that they were obligated to pay the charges. (Motion,

10   page 9, fn  7)  The Hebard Defendants are skeptical of this testimony because such statements

11   would have been against policy  (Hebard Decl , ¶9)  The EPV Entities mailed approximately

12   4.4 million solicitation checks.  (Hebard Decl , ¶7)  Recognizing that some persons might

13   deposit these checks by accident, the policy was established to issue refunds as requested by the

14   customer, to this end, in excess of $2 8 million in refunds were paid to consumers  (Hebard

15   Decl , ¶7)  Even assuming that the testimony from these eighteen consumers were true, it is

16   simply evidence of isolated instances in which the customer service representatives failed to

17   follow policy.

18       In sum, the customer service problems described by the three consumers deposed by the

19   FTC were the result of these "growing pains" and was not the result of a scheme or pattern of

20   intentional conduct designed to mislead consumers  (Hebard Decl , ¶9) The Hebard Defendants

21   are embarrassed that these consumers apparently received poor customer service, but believe

22   that it happened during the limited periods where the staffing or phone lines were inadequate or

23   where the person responding to the refund request failed to follow proper procedures  (Hebard

24   Decl , ¶9)

25

26

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50319898 01

1  **IV.     RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

2      **A.     Summary Judgment Standards**

3          For the FTC to prevail on the Motion, it must show that "there can be but one conclusion

4  as to the verdict " Anderson v Liberty Lobby, Inc., 477 U S. 242, 250, 106 S Ct. 2505, 2511,

5  91 L Ed 2d 202 (1986).  Thus, the FTC must establish, through competent summary judgment

6  evidence, specific facts supporting each element of its causes of action.  See, e.g., S D Myers,

7  Inc. v. City and County of San Francisco, 253 F.3d 461, 474 (9th Cir 2000)  Moreover, as

8  mentioned above, only evidence in an admissible form can be considered.  Orr v Bank of

9  America, 2002 WL 338141 (9th Cir. 2002).

10     **B.     Liability Under 15 U.S.C. §45(a)**

11         "To establish that defendants violated the FTC Act Section 5(a) [15 U S C  §45(a)] by

12 engaging in unfair or deceptive acts or practices in or affecting commerce, the FTC must

13 ultimately demonstrate a material representation, omission or practice that is likely to mislead

14 consumers acting reasonably in the circumstances " F.T C  v  Verity Intern., Ltd., 124 F.Supp

15 2d 193, 200 (S D.N.Y 2000), citing F.T C. v  Pantron I Corp., 33 F 3d 1088, 1095 (9th Cir

16 1994), cert denied, 514 U.S 1083, 115 S Ct  1794, 131 L Ed 2d 722 (1995).   See also,

17 Southwest Sunsites, Inc. v. F.T.C., 785 F 2d 1431, 1436 (9th Cir 1986), cert. denied, 479 U.S.

18 828, 107 S Ct  109, 93 L Ed.2d 58 (1986).  The FTC has not met this burden

19         The FTC has not established a "material representation or omission or practice that is

20 likely to mislead."   In fact, nowhere on the marketing material can the FTC point to any

21 statements that are false or inaccurate.  Further, the FTC can point to no omissions whatsoever

22 Every statement made on the marketing pieces is absolutely true and the terms of the offer were

23 disclosed in three different places: 1) on the back of the check where the recipient would be

24 certain to have seen it before cashing or depositing same; 2) on the back of a stub attached to the

25 check, and 3) on an insert enclosed with the check  This insert also 1) described the internet

26 service offered, 2) described the monthly charge for the service; 3) described the consequences

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 13
Case No C00-1806L

**FOSTER PEPPER & SHEFELMAN PLLC**
**1111 THIRD AVENUE, SUITE 3400**
**SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400**

50319898 01

1    of cashing or depositing the check, 4) disclosed that the monthly charge would be added to the

2    consumer's local phone bill; and 5) provided an 800 number to call for refunds  The FTC,

3    apparently acknowledging the lack of misrepresentations or omissions, makes vague,

4    conceptual (and somewhat bizarre) arguments as to how this requirement is met, further

5    described below

6           **C.**     **Comment on the FTC's Summary Judgment Evidence**

7         Even if the FTC can overcome the above evidentiary objections to its summary

8    judgment evidence, the testimony presented by the FTC should be recognized as biased and

9    skewed  A large proportion of the points made by the FTC in the Motion are supported either

10    by the declarations and deposition of 31 consumers or by the deposition testimony of Don

11    Reese.

12         As support for its contention that the solicitation checks were misleading, the FTC relies

13    almost entirely on anecdotal evidence from 31 out of 4.4 million recipients of the solicitation

14    checks  Significantly, the FTC has presented <u>no</u> expert testimony showing that, from a

15    marketing perspective, the solicitation checks were misleading  Further, the FTC has presented

16    <u>no</u> surveys, samplings or other statistical expert testimony reflecting the understandings of the

17    actual customers.  In fact, from the documents attached as exhibits to the declarations and the

18    depositions, it would appear that the 31 consumers who gave testimony were selected by the

19    FTC exclusively from a pool of consumers who filed complaints with the Better Business

20    Bureau or with governmental regulatory agencies  Accordingly, the consumer testimony should

21    be not be viewed as representative of the customers of the EPV Entities.

22         In addition, the FTC relies heavily upon the testimony of Don Reese, a former employee

23    of Ian Eisenberg.  Mr. Reese is involved in a lawsuit with Ian Eisenberg and in his deposition

24    authenticated a letter in connection with this dispute stating that "It is time [Ian Eisenberg] be

25    punished for his actions." (Reese Depo., Page 170, lines 1-3 and Exhibit 201)  Although Chris

26

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 14
Case No C00-1806L

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50319898 01

1  Hebard enjoyed a positive working relationship with Mr Reese, the hostility between Mr Reese

2  and Mr. Eisenberg should be considered when weighing Mr Reese's deposition testimony.

3  **D.    The FTC Embellishes on the Summary Judgment Evidence – Again!**

4          In the Reply Brief of Defendants Chris Hebard and Coto Settlement to FTC Opposition

5  to Hebard Defendants' Motion for Partial Summary Judgment, the Hebard Defendants noted

6  two specific instances in which the FTC, in its pleadings, embellished the summary judgment

7  evidence.  First, the FTC cited portions of consumer testimony for the proposition that the

8  consumers "deposited the checks without noticing the inconspicuous fine print," whereas, in

9  fact, the consumers said no such thing, and second, the FTC cited an excerpt of consumer Jack

10 Robrecht's deposition testimony in which he mentioned that he was using a magnifying glass to

11 read the solicitation check, but failed to cite the portion of the deposition in which Mr. Robrecht

12 stated that he used the magnifying glass because he left his glasses at home    (See, Hebard

13 Defendant's Reply Brief, page 10-11)

14         Unfortunately, the FTC's propensity to embellish on the summary judgment evidence

15 continues   On page 10 of the Motion, the FTC makes a strong statement that consumers

16 believed the solicitation checks to be "a refund, rebate or some payment based on a prior or

17 existing business relationship" based upon four specific factors:  1) the small amount of the

18 check, 2) the reference to the consumer's telephone number, 3) the "invoice-like form", and 4)

19 the lack of disclosures on the front of the check did not state the consequences of cashing the

20 check  In support for this assertion, the FTC cited specific portions of 19 consumer declarations

21 and three consumer depositions. (Footnote 9)

22         However, in not one of the consumer declarations or depositions are all four of the

23 factors cited by the FTC mentioned   Moreover, in all but three of these declarations and

24 depositions, the witnesses simply state that they (or someone associated with them) deposited

25

26

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 15
Case No  C00-1806L

**FOSTER PEPPER & SHEFELMAN PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50319898 01

1    the check because it was assumed to be a rebate check [5]  Further, the statements referenced in 9

2    of the declarations are hearsay.[6]  Thus, listing of the aforementioned four factors by the FTC is

3    simply another embellishment of the summary judgment evidence.

4    **E. The Three Assumptions**

5        The FTC's case is based almost entirely upon three unsupported or inaccurate

6    assumptions which are repeatedly asserted in the Motion

7    **1.    First Assumption:    All Consumers Who Deposited the Solicitation Check did so in**
         **Error.**
8

9        First, the FTC assumes that <u>all</u> consumers who deposited solicitation checks did so in

10   error  Thus, in calculating its claim of consumer injury, the FTC arrives at its requested

11   damages figure by taking the <u>total</u> revenue received by the EPV Entities and subtracting all

12   refunds and the total amount of solicitation checks deposited  Hence, the FTC contends that <u>not</u>

13   <u>even one</u> person out of the over 250,000 people who cashed the solicitation checks did so

14   intentionally

15       To support its contention, the FTC relies entirely on its contention of "low usage",[7] that

16   is, the FTC contends that less than 1% of those who deposited the solicitation check actually

17   used the service. In fact, the FTC makes this assertion three times in the Motion (pages 1, 5 and

18   8)  However, the <u>only</u> support given by the FTC for this remarkable statistic is Exhibit 302, the

19   Tobin Declaration (Motion, page 5)  For the reasons stated above, the Tobin Declaration is

20

21       [5]    Note that  in the Achey Decl (Exh 270), ¶ 3 and the Hunter Decl (Exh 282), ¶ 8, the witnesses stated
     that they thought the solicitation checks were rebate checks based on the appearance of the checks and the small
22   amounts  Further, in the R Wood Decl (Exh 295 ), ¶ 8, the witness stated that she thought the solicitation check
     was a rebate and commented that nowhere on face of the check are the terms disclosed  Moreover, in the Robrecht
23   Depo (Exh 267), p 9, l 9-12, p 44, l 13-24, the witness thought the solicitation check was a rebate check based
     upon the small amount of the check
     [6]    See, Clifton Decl (Exh 273), ¶ 6, Davis Decl (Exh 274), ¶ 9 Loepkey Decl (Exh 286), ¶ 7, Rutkowski
24   Decl (Exh 289), ¶ 9, Santos Decl (Exh 290), ¶ 7, Shedivy Decl (Exh 291), ¶ 7, Silva Decl (Exh 292), ¶ 9, W
     Wood Decl (Exh 296), ¶ 9, and Coram Depo (Exh 266), p 57, l 18-25
25
     [7]    The consumer depositions and declarations are, at best, anecdotal testimony from 31(out of over 250,000)
26   customers

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR          **FOSTER PEPPER & SHEFELMAN PLLC**
SUMMARY JUDGMENT - 16                                          **1111 THIRD AVENUE, SUITE 3400**
Case No C00-1806L                                   **SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400**

inadmissible   Ms Tobin purports to give opinions and make conclusions as to her analysis of various databases, but fails to give expert qualifications.   In reality, the purpose of the Tobin Affidavit is to simply summarize inadmissible documents it received from a company known as "Starnet "   These documents, Exhibits 4, 11 and 12, are described by Ms. Tobin in paragraphs 32 through 41 of her declaration and form the basis of her statement in paragraph 42 which is cited by the FTC as the sole support its contention that less than one percent of the EPV Entities' customers used the services   However, these documents are not authenticated and are thus not admissible.

In sum, the primary foundation of the FTC's claims is its assertion that there was an abnormally low usage (1%), however, the only support for this is a conclusion of a non-expert FTC employee, which itself is based upon unauthenticated documents.   Thus, this assumption should be rejected as unsupported.

**2.     Second Assumption:          The Marketing Material was Confusing to Consumers**

Throughout the Motion, the FTC makes blanket assertions to the effect that the EPV Entities' marketing material was confusing to consumers   In making these assertions, the FTC repeatedly gives its subjective opinion that the marketing materials were not conspicuous (Motion, pages 1, 8, 10 and 11)   Moreover, the FTC provides its subjective opinion that the marketing materials created the appearance of a prior relationship (Motion, pages 1, 10 and 11)   Finally, the FTC presumes to know the state of mind of the consumers (Motion, pages 1, 6, 9, 11, 15 and 16)   The only support for these assertions are anecdotal testimony from consumers. However, as described above, in the only testimony taken by deposition (as opposed to the declarations drafted by the FTC where the defendants in this action did not have the opportunity to cross-examine), the consumers readily admitted that the marketing material was clear to them   Thus, this assumption that the marketing material was confusing also is unfounded.

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 17
Case No  C00-1806L

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50319898 01

**3.    Third Assumption:  The Marketing Material Generated a High Level of Complaints**

The FTC also makes blanket assertions that the EPV Entities' business generated a high level of complaints  (Motion, pages 1, 2, 12, 14 and 15).  This is an assumption based primarily upon the deposition testimony of Mr  Don Reese, a former employee of Ian Eisenberg, and upon the existence of several proceedings instituted by state agencies   However, no showing was made that Mr. Reese is competent to render an opinion that the complaints generated as a result of this direct mail campaign are any different from complaints generated in any direct mail complaint.  Moreover, the existence of state agency actions is not admissible to prove liability in the instant proceeding   In reality, most of the complaints were generated as a result of unfortunate poor customer service that occurred during several periods of time and which was the result of "growing pains" experienced by this startup business.  Thus, this assumption is also without support

**F. Summary Judgment Is Not Appropriate as to Any of the Counts in the Complaint**

**1.    Count One**

In Count One of the Complaint, the FTC asserts the defendants in this action violated §45(a) by representing "that consumers who receive defendants' charges on a bill are legally obligated to pay for those charges."  As explained by the FTC in the Motion, it contends that the monthly billing statements to the customers constituted misrepresentations because the bills stated that the customers were obligated to pay when, in fact, the FTC alleges, they were not (Motion, page 19) This argument is a classic example of circular logic, for it is only correct if the consumers deposited the check by mistake – an unsupported assumption by the FTC

The FTC has failed to establish the elements of §45(a) by competent summary judgment evidence with respect to this count; accordingly, the FTC's request for summary judgment should be denied as to Count One

**FOSTER PEPPER & SHEFELMAN PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50319898 01

1

2.   **Count Two**

2         In Count Two of the Complaint, Plaintiff asserts that the defendants in this action

3    violated 15 U.S C  §45(a) by representing "that defendants' solicitation check is a refund,

4    rebate, receivable or other payment for services based on a prior or ongoing business " The

5    basis for this argument is the FTC's subjective belief.   Specifically, the FTC asserts that

6    "invoice-like form attached to the solicitation check, which included fields such as 'Invoice

7    Number', 'Account Number', and 'Discount Taken'" was such that "consumers are likely to

8    assume" a prior or ongoing business relationship    (Motion, page 20) The <u>only</u> evidence

9    supporting this supposition are statements from 22 of the 31 consumers from whom the FTC

10   took testimony. (Motion, page 6, fn. 2 and page 10, fn  9)

11        Further, the FTC myopically focuses on these terms and refuses to view the marketing

12   material as a whole, which is required   <u>Beneficial Corp. v. FTC</u>, 542 F 2d 611, 617 (3rd Cir

13   1976), <u>cert denied</u>, 430 U.S. 983, 97 S.Ct. 1679, 52 L Ed 2d 377 (1977).  Full disclosure of the

14   terms of the offer were found in two different places on the solicitation check  1) above the

15   endorsement line on the back of the check; and 2) on the back of a stub attached to the check.

16   (Hebard Dec., ¶5 and Exhibit "A" thereto)  In addition, included in the envelope with the check

17   was an insert which  1) described the internet service offered, 2) described the monthly charge

18   for the service, 3) described the consequences of cashing or depositing the check; 4) disclosed

19   that the monthly charge would be added to the consumer's local phone bill, and 5) provided an

20   800 number to call for refunds  (Hebard Dec., ¶5 and Exhibit "A" thereto)        Thus,    the

21   FTC's request for summary judgment should be denied as to Count Two, for the FTC has

22   likewise failed to establish the elements of §45(a) by competent summary judgment evidence

23   with respect to this count.

24        3.   **Count Three**

25        In Count Three of the Complaint, Plaintiff asserts that the defendants in this action

26   violated 15 U.S.C. §45(a) by sending solicitation checks which failed to disclose clearly and

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 19
Case No C00-1806L

**FOSTER PEPPER & SHEFELMAN PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ◆ 206-447-4400

50319898 01

conspicuously the material conditions associated with depositing or cashing the solicitation checks. In the Motion, however, the only evidence cited for this assertion is Exhibit 303, which is unauthenticated   (Motion, page 8).   Thus, at its core, the FTC's contention is based upon nothing more than an unsupported subjective belief that the marketing material mailed by the EPV Entities were not clear and conspicuous   Accordingly, the FTC's request for summary judgment should be denied as to Count Two, for the FTC has further failed to establish the elements of §45(a) with respect to this count by competent summary judgment evidence

### G.   There is no Showing that the Consumers who Allegedly Suffered Injury Acted Reasonably in the Circumstances

The FTC must also establish that the act in question "is likely to mislead consumers acting reasonably in the circumstances." F.T C. v. Verity Intern , Ltd , 124 F.Supp 2d at 200. The consumer declarations placed before this Court are superficial and were obviously drafted by the FTC using one of two forms   However, the three consumer depositions – Schoomer, Coram and Robrecht – are much more informative in that these individuals were cross-examined by the defendants.

These depositions, far from showing consumers "acting reasonably in the circumstances" who were mislead as required by 15 U S.C  §45(a), simply show mistakes made by three recipients(out of 4 4 million) of the solicitation checks   Mr Coram readily admitted that the solicitation check was deposited by mistake   (Coram Depo., page 43, lines 8 through 12, and page 47, lines 5 through 9)   Ms. Schoomer testified that out of the several hundred checks her company receives every week, only two to three are from "non-customers" and that under the "two-hands policy" her company has with respect to money transactions, this solicitation check should not have been cashed. (Schoomer Depo., page 50, line 25 through page 51, line 10, and page 117, line 6 through page 119, line 11)  Mr. Robrecht was unable to provide a rational explanation as to why he deposited the solicitation check:  He testified that his company received less than 50 checks each month (Robrecht Depo., page 35, line 16,

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 20
Case No C00-1806L

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50319898 01

through page 36, line 6), that his company had a procedure for matching the checks with customers (Robrecht Depo., page 36, lines 17 through 21), that this procedure would have been followed for the solicitation check   (Robrecht Depo., page 37, lines 7 through 14), and that having a check come in that could not be matched with a customer was a rare event. (Robrecht Depo., page 37, line 25 through page 38, line 4) Thus, the consumer depositions merely provide three instances out of 4.4 million, where the recipient of the direct mail solicitation made a mistake in depositing the check   None of these consumers testified that they were misled by the checks   In the event that any of the consumers who simply signed the FTC drafted declarations are subjected to cross-examination, it is likely that similar testimony would be elicited

### H. The Case Law Cited by the FTC does not Support the Contentions made by the FTC.

In support of its request for summary judgment, the FTC cites numerous cases involving the application of the Federal Trade Commission Act. However, these cases are distinguishable in that they involved express misrepresentations to consumers or material omissions.

1. **F.T.C. v. Pantron I Corp.**, 33 F.3d 1088 (9th Cir. 1994), **cert. denied**, 514 U.S. 1083, 115 S.Ct. 1794, 131 L.Ed.2d 722 (1995): In this case, the defendant marketed the "Helsinki Formula" with the false representation that there was scientific support for the conclusion that the product was effective against male pattern baldness

2. **Southwest Sunsites, Inc. v. F.T.C.**, 785 F.2d 1431, 1436 (9th Cir. 1986), **cert. denied**, 479 U.S. 828, 107 S.Ct. 109, 93 L.Ed.2d 58 (1986): Here, the defendants made express misrepresentations regarding the investment value of the real estate

3. **F.T.C. v. American Standard Credit Systems, Inc.**, 874 F.Supp. 1080 (C.D. Cal. 1994): In this case, the defendants, marketers of credit cards, made express misrepresentations that anyone can qualify and failed to disclose additional costs and conditions in order to qualify for a credit card

4. **F.T.C. v. Amy Travel Service, Inc.**, 875 F.2d 564 (7th Cir. 1989), **cert. denied**, 493 U.S. 954, 110 S.Ct. 366, 107 L.Ed.2d 352 (1989): The defendants telemarketed travel packages, and the Court found numerous misrepresentations in the telemarketing scripts and the statements made by the defendants' representatives.

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 21
Case No C00-1806L

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50319898 01

**5.** **F.T.C. v. Kitco of Nevada, Inc.**, 612 F.Supp. 1282 (D. Minn. 1985): Here, the Court found that the defendants "directly misrepresented material facts to induce purchasers to invest", specifically, the defendants made false claims regarding income potential.

**6.** **F.T.C. v. Wilcox**, 926 F.Supp. 1091 (S.D. Fla. 1995): The defendants operated a direct mail operation and made many express and implied statements that created false impressions regarding the nature of the awards and cash that could be claimed by the consumers.

**7.** **Beneficial Corp. v. F.T.C.**, 542 F.2d 611 (3rd Cir. 1976): The defendant offered short term loans secured against the borrowers expected tax refund, however, the offer was advertised as an "instant tax refund" without disclosing that the defendant was simply offering normal loan service with associated loan service fees.

**8.** **In re Standard Oil Co. of California**, 84 F.T.C. 1401 (1974), **aff'd as modified**, 577 F.2d 653 (9th Cir. 1978), **reissued**, 96 F.T.C. 380 (1980): The defendant made express misrepresentations regarding the value of a gasoline additive.

**9.** **In re Litton Industries, Inc.**, 97 F.T.C. 1 (1981), **aff'd as modified**, 676 F.2d 364 (9th Cir. 1982): The defendant made express representations regarding the superiority of its products which were not substantiated.

**10.** **In re Stouffer Foods Corp.**, 118 F.T.C. 746 (1994): In this case, the defendant misrepresented that its food products were low in sodium

**11.** **In re Giant Food, Inc.**, 61 F.T.C. 326 (1962): Here, the defendant advertised using terms such as "manufacturer's list price" to falsely imply a below normal price.

**12.** **In re Cliffdale Associates, Inc.**, 103 F.T.C. 110 (1984): The defendants made false representations that their product was a unique new invention which improved fuel efficiency.

**13.** **F.T.C. v. Febre**, 128 F.3d 530 (7th Cir. 1997): Here, the defendants advertised work-at-home opportunities for a small initial sum to participate, but failed to disclose the additional significant costs for continued participation.

**14.** **F.T.C. v. Gem Merchandising Corp.**, 87 F.3d 466 (11th Cir. 1996): The defendants telemarketed medical alert devices by making misrepresentations regarding prizes that consumers were to receive if they purchased the product

**15.** **F.T.C. v. Publishing Clearing House, Inc.**, 104 F.3d 1168 (9th Cir. 1996): In this case, the defendants made express misrepresentations regarding prizes that the consumers were to receive for making charitable contributions and that the contributions would be tax deductible.

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 22
Case No C00-1806L

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50319898 01

1    In all of the above cases, a common theme is seen  Either the defendants made express

2    representations that were false, failed to disclose material terms, or created false impressions

3    This is consistent with the standard imposed by Courts that the FTC "demonstrate a material

4    representation, omission or practice that is likely to mislead consumers acting reasonably in the

5    circumstances " F.T.C. v. Verity Intern , Ltd , 124 F. Supp. 2d at 200

6    ·    In the present case, the FTC can show none of these factors. First, nowhere in any of the

7    marketing materials is there any statement that is false    Second, there are no hidden terms;

8    everything is fully disclosed in the marketing materials  Third, there are no statements made in

9    the marketing pieces that create false impressions.  The solicitation check mailed by the EPV

10   Entities is exactly what it purports to be and is no different from the countless solicitation

11   checks that consumers receive in their mail every day  To the extent that the FTC claims that

12   the deceptive act is mailing solicitation checks to businesses where they would be likely

13   confused with business rebate checks, the facts would contradict such a contention    As

14   described above, the business mailings had a 4.69% response rate and the consumer mailings

15   had a 6 49% response rate. (Hebard Decl ¶7)

16   **V.  CONCLUSION**

17   The allegations by the FTC that the Hebard Defendants violated 15 U S.C. §45(a) are

18   based solely upon assumptions unsupported by competent summary judgment evidence  In fact,

19   in presenting summary judgment evidence, the FTC disregarded even the most basic

20   requirements of Fed.R Civ Proc 56

21   The FTC's case is founded on three unsupported assumptions  First, the FTC *assumes*

22   that essentially all consumers who deposited the solicitation check did so in error    This

23   assumption is based on the FTC's contention of "low usage" which itself is based only upon

24   unauthenticated and unreliable evidence  Second, the FTC *assumes* that the marketing material

25   was confusing to consumers. This assumption is based solely upon a subjective belief by the

26   FTC that the disclosures made on the solicitation checks were not conspicuous.  Third, the FTC

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 23
Case No  C00-1806L

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50319898 01

1     *assumes* that the EPV Entity's business generated a high level of complaints  This assumption

2     is likewise only supported by unauthenticated documents and inadmissible testimony

3        Moreover, the FTC has failed to establish a "material representation or omission or

4     practice that is likely to mislead" as required to assess liability under §45(a)  Nowhere on the

5     marketing materials can the FTC point to <u>any</u> statements that are false or inaccurate, nor can the

6     FTC point to any omissions   Further, mailing solicitation checks to businesses was not

7     misleading, for the response rate for consumers was actually higher than the response rate for

8     businesses

9        In short, the claims made by the FTC against the Hebard Defendants are entirely

10     unsupported and should be dismissed on the Hebard Defendants' motion for summary

11     judgment. In any event, the request by the FTC for summary judgment should be denied in its

12     entirety

13        WHEREFORE, PREMISES CONSIDERED, Defendants Chris Hebard and Coto

14     Settlement respectfully deny the request of the Federal Trade Commission for summary

15     judgment, and for such other and further relief as to which they may be entitled

16        Respectfully submitted this 15th day of April, 2002.

17                  FOSTER PEPPER & SHEFELMAN, PLLC

19            By

                   Sarah K. Johnson, Esq., WSBA No  30915
                   1111 Third Avenue, Suite 3400
                   Seattle, Washington 98101
                   Phone  (206) 447-4400
                   Facsimile· (206) 447-9700

                   FRIEDMAN & FEIGER, LLP
                   Lawrence J  Friedman, Esq
                   Texas State Bar No. 07469300
                   Ernest W. Leonard, Esq.
                   Texas State Bar No  12208750
                   5301 Spring Valley Road, Suite 200
                   Dallas, Texas 75254

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 24
Case No  C00-1806L

**FOSTER PEPPER & SHEFELMAN PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50319898 01

1

Phone   (972) 788-1400
Facsimile   (972) 776-5313

2

3

Attorneys for
FOR CHRIS HEBARD AND
COTO SETTLEMENT

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 25
Case No  C00-1806L

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50319898 01